IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**RONNY E. RIGSBY**                                                  **PLAINTIFF**

**v.**                                                         **No. 1:19CV63-GHD-RP**

**JIM JOHNSON**
**JOH BRIAN HALL**
**NURSE JUDY**                                               **DEFENDANTS**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Ronny E. Rigsby, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants cursed at him using racial epithets, failed to provide him with adequate medical care, placed him in a cell with poor general conditions of confinement, and placed him in segregation without due process. The defendants have moved for summary judgment, and the plaintiff has responded. The matter is ripe for resolution. For the reasons set forth below, the defendants' motion for summary judgment will be granted, and judgment will be entered in favor of the defendants.

### Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248.

If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v.*

*Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994).

It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible. Matsushita, supra.* (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

- 3 -

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

### Mr. Rigsby's Stay at the Lee County Jail

As background, on September 11, 2018, Mr. Rigsby was arrested and booked for possession of drugs. On September 13, Judge Willie Allen ordered him to serve 100 days, but later released Rigsby on October 23, 2018, pending his compliance with court orders, probation, and treatment.

On December 13, 2018, Rigsby was arrested for shoplifting, and on December 17, Judge Allen ordered Rigsby to serve 180 days in jail. On April 2, 2019, the drug charges from September 2018, were retired to the file, and an order was entered to extradite Rigsby to Rockford, Illinois, where a warrant had been issued for his arrest on charges of domestic battery. Rigsby was released from LCDC on April 15, 2019, and transported to Illinois.

### Undisputed Material Facts[1]

During the times relevant to this case, Mr. Rigsby was incarcerated at the Lee County Jail, where he was housed from September 11, 2018, through October 23, 2018 – then again from December 13, 2018, through April 15, 2019. He alleges that during his stay there the defendants used

---

[1] Solely for the purposes of this discussion, the court has taken the plaintiff's allegations to be true. Also, for ease of reading, the facts involving the claim of denial of medical care may be found in the section discussing that issue.

racial slurs against him and threatened him. He was placed for a time in a cell with no hot water and some water leaking into the cell. He was placed in lockdown "without being given the proper procedure."

### Racial Epithets and Foul Language

It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983. *See Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993), *Siglar v. Hightower*, 112 F.3d 191(5th Cir. 1997). Indeed, racial slurs, foul language, and threats do not rise to the level of a constitutional violation. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995). These allegations fail to state a claim upon which relief could be granted and will be dismissed for that reason.

### No Hot Water and Water Leaking into Cell

"[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Considering the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the instant claims do not rise to the level of a constitutional violation. There is no constitutional right to hot running water, and the plaintiff alleged no harm from the water leaking into his cell. Hence, the plaintiff has not identified any "basic human need" which he was denied for an unreasonable period of time. *See Woods*, 51 F.3d

at 581. This allegation must also be dismissed for failure to state a claim upon which relief could be granted.

### Placement in Lockdown Without Proper Procedure: Due Process in the Prison Context

Mr. Rigsby's allegation regarding a deficient procedure used to place him in lockdown must also fail. Under the ruling in *Sandin v. Conner*, 515 U.S. 472 (1995), the plaintiff has not set forth a valid claim for violation of the Due Process Clause or any other constitutional protection. Though

> [s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause, . . . these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* 115 S. Ct. at 2300 (citations omitted). In *Sandin*, the discipline administered the prisoner was confinement in isolation. The court found that this discipline fell "within the expected parameters of the sentence imposed by a court of law," and "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 2301 and 2300. Therefore, neither the Due Process Clause itself nor State law or regulations gave rise to a liberty interest providing the constitutional procedural protections afforded prisoners:

(1) Advanced written notice of the claimed violation;
(2) A written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken;
(3) The ability to call witnesses (which can be limited at the discretion of prison officials for security and other reasons);
(4) The ability to present documentary evidence.

*Wolff v. McDonnell*, 418 U.S. 539, 563-567 (1974); *see also Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (holding prisoner's thirty-day loss of commissary privileges and cell restriction due to disciplinary action failed to give rise to due process claim).


In the present case, the plaintiff's punishment was placement in lockdown. Such punishment clearly falls "within the expected parameters of the sentence imposed by a court of law," *id.* at 2301, and "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* As such, the plaintiff's allegations regarding violation of his right to due process are without merit, and they will be dismissed for failure to state a claim upon which relief could be granted.

## Denial of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). This same subjective deliberate indifference standard has been applied to pre-trial detainees under the Fourteenth Amendment as well

as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).

In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

The plaintiff's medical records show that Mr. Rigsby received medical attention for the conditions he mentioned in his complaint. He had several medical conditions that predate his incarceration in the Lee County Detention Center: a right below the knee (BTK) amputation which

caused chronic pain as indicated from his medical records a history of hypertension. Exhibit C, NMMC medical records.

During his first incarceration in September 2018, Rigsby was treated by the medical staff at LCDC. Progress notes from that treatment state:

> 9/14/18 History of hypertension. Vital signs: BP 141/94, pulse 79. Off meds. Detained yesterday. Complains of left stump pain. Exam: Left below knee amputation stump with no erythema, warmth, edema. No skin breakdown. Diagnosis: Hypertension, phantom pain. Plan: Lisinopril 20 / HCTZ 12.5g PO daily.

Exhibit B, LCDC medical records, LCDC 00077.

When Mr. Rigsby was incarcerated for the second time at LCDC, he received further treatment by the medical staff at LCDC, as indicated by the Progress Reports of the medical staff there:

> 1/10/19 Complains of pain. Location to left lower chest wall. Describes as burning. Vital signs: temp 98.6, O2 sat 100%, respirations 16, BP 176/105, pulse 63. Exam: Awake, alert, oriented. No distress. Well appearing. Regular rate, rhythm. Bilateral breath sounds clear. No rash. Positive tenderness to left lower chest wall. Abdomen soft and nontender. Diagnosis: costochondritis, hypertension. Plan: Increase Lisinopril 20g (sic) PO daily. CMP. Tylenol/Motrin PRN pain.

Exhibit B, LCDC medical records, LCDC 00077.

> 1/11/19 TORB (*telephone order read back*) per Jamie Burrell, NP for Naprosyn 500g (sic) 1 PO BID #2, no refills.

Exhibit B, LCDC medical records, LCDC 00077.

> 2/27/19 Complains of left side chest pain. Worse with motion. Left shoulder pain with motion. No injury or trauma. No shortness of breath. No fever. Temp 97.5, O2 sat 97%, pulse 64, respirations 12. BP 165/106. Exam – Well-appearing. No complaints of distress. Regular rate, rhythm. Bilateral breath sounds clear. No rash. Hypersensitivity pneumonitis to left chest wall and trapezius muscle. Neuro intact. Good range of motion to left shoulder. Diagnosis: Chest wall pain, muscle spasm, hypertension. Plan: Flexeril 10g (sic) 1 PO 7-10 PRN pain #15. Norvasc 5mg 1 PO daily #30. Tylenol 1/ ____ PRN pain.

Exhibit B, LCDC medical records, LCDC 00076.

> 3/8/19 Tender over left AC joint left shoulder. Resists movement. AC tendonitis. Continue Advil.

Exhibit B, LCDC medical records, LCDC 00076.

> 3/20/18(sic) Refer to be seen.

Exhibit B, LCDC medical records, LCDC 00075

> 3/28/19 Complains of ongoing crack to prosthetic (which was present upon arrival in jail) and chronic right stump pain. Keloid formation to left forearm from laceration which inmate refused to be repaired. States no other complaints. Exam – non-infected well-healed stump. Non-infected Keloid formation to left forearm.

Exhibit B, LCDC medical records, LCDC 00075. Mr. Rigsby also complains that because LCDC did not provide him a wheelchair as he was provided in Rockford, Illinois, LCDC failed to provide him with reasonable medical care. Exhibit D, Exhibit to Complaint, ECF 24.

The defendants examined and treated Mr. Rigsby for nearly all the conditions about which he complains, and none of the other conditions he mentions exposed him to "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Mr. Rigsby makes several claims based upon the allegations in his complaint. He claims that the defendants only checked his blood pressure six times during his stay at the jail. The defendants did, however, measure his blood pressure, provide him with medication for high blood pressure, and increased his dosage when his blood pressure was still a bit high. Thus, he was treated for hypertension.

Mr. Rigsby further claims that he has an enlarged prostate, which caused him difficulty in urinating. He acknowledges that the defendants provided him with medication to treat this condition, but states that the medication did not seem to help much with his symptoms. Again, he was treated for the condition about which he complains.

He alleges that his arm was infected from a cut he received in 2018 – and that his shoulder was in pain. Medical staff examined and treated him for these conditions.

He claims that the defendants have given him "no help for bone problems," which made it difficult for him to "move about." He does not provide any details regarding this allegation; nor did he allege any injury from this alleged oversight.

Mr. Rigsby further claims that, on one occasion, he accidentally received another inmate's prescription psychoactive medication, which caused him to be in a strange state of mind during that day. He alleged no injury whatsoever from the alleged negligent administration of prescription medication.

He additionally alleges that he needed to see a dentist and a "bone surgeon," though did not state why he believed he needed to see them – or what harm he may have suffered from the defendants' decision not to send him for treatment.

Mr. Rigsby alleges that the defendants refused to repair his cracked prosthetic leg – and that walking with the prosthetic leg caused him "severe pain." Medical staff examined his leg and found a "non-infected well-healed stump." Exhibit B, LCDC medical records, LCDC 00075. He had previously been diagnosed with "phantom pain" associated with his amputated leg. *Id*.

He finally alleges that the defendants should have provided him with a wheelchair to move about. Again, he has not alleged what harm he may have suffered from lack of a wheelchair.

The plaintiff's allegations do not come close to meeting the stringent "deliberate indifference" standard to sustain a claim for denial of adequate medical care, as Mr. Rigsby has not shown that "[medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498. Instead, he was examined and treated for

many of his various ailments. The other problems about which he complains do not rise to the level of "serious medical needs." *Id.* For these reasons, the plaintiff's claims regarding denial of adequate medical care are without merit and must be dismissed.

## Conclusion

For the reasons set forth above, the motion by the defendants for summary judgment will be granted, and judgment will be entered for the defendants in all respects. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 16th day of September, 2020.

_____
SENIOR UNITED STATES DISTRICT JUDGE